UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JERRY DOWDY                                                                          PLAINTIFF

V.                                              CIVIL ACTION NO. 3:20-CV-781-KHJ-LGI

DENT AIR CONDITIONING COMPANY                                      DEFENDANT

ORDER

Before the Court is Defendant Dent Air Conditioning Company's Motion for Summary Judgment [17]. For the following reasons, the Court denies the motion.

I.     Facts and Procedural History

This case arises from an employment relationship between Plaintiff Jerry Dowdy and Dent Air Conditioning Company. The next facts are undisputed. Dowdy began working for Dent Air Conditioning Company as a service technician in April 1990. Memo in Support of Def.'s Mot. for Summ. J. [18] at 1; Pl.'s Resp. [20] at 2. In December 2018, Southern Air & Plumbing bought Dent Air Conditioning Company and became Dent's Heating & Cooling, LLC ("Dent"). [1] [18] at 2. Dowdy continued to work as a service technician under the new ownership. [18] at 2; [20] at 3. In January 2019, Dent hired Isaac Parker as a service manager, and he was promoted to general manager in November 2020. Depo. of Isaac Parker [17-3] at 7.[2] As a service manager, Parker was responsible for personnel decisions, sales meetings,

---

[1] Dent notes that it is misnamed as Dent Air Conditioning Company, and its correct name is Dent Heating & Cooling, LLC. [17] at 1.
[2] The Court cites to page numbers assigned by CM/ECF.

and day-to-day operations. *Id.* When Parker first started his job as a service manager, he "observed and evaluated all of the existing employees" at Dent. Decl. of Isaac Parker [17-2] ¶ 3.

The parties dispute the next facts. Dent claims that Parker noted performance problems with several employees, including Dowdy, during his first few months as the service manager. [18] at 2 (citing [17-2] ¶ 4). For example, Parker observed that Dowdy often fell asleep during meetings, he sat in the break room when he was supposed to be on service calls, and he arrived late to service calls "almost every day." [17-3] at 27, 32–33. Parker attested that he spoke with Dowdy several times about his lack of productivity and behavior, but "[h]is response was always that he was just tired." [17-2] ¶ 5. Parker also noted that he felt Dowdy showed no interest in improving and was disrespectful. *Id.*

Dowdy disagrees with Dent's characterization of events. He first argues that he fell asleep during meetings because of his sleep apnea, and he never received customer complaints during his tenure at Dent. Depo. of Jerry Dowdy [17-1] at 41; [17-3] at 14. Dowdy also disputes that Parker spoke to him several times about his poor performance and lack of productivity. [20] at 3. According to Dowdy, he and Parker talked rarely unless it was about equipment or customer issues. [17-1] at 55. Dowdy testified that the only time Parker communicated to him about his performance was via text message congratulating him on the completion of a sale on his day off, and he never received a written disciplinary action. [17-3] at 16, 22; [17-1] at 40.

Based on Dowdy's contested lack of productivity and disinterest in improving his performance, Parker terminated Dowdy's employment on March 26, 2019. [17-2] ¶ 6; [17-3] at 44. Dowdy was 61 years old at the time. [18] at 3; [20] at 1. Parker also terminated two other employees, Katie Vallejo and Byron Nichols, on the same day because of similar performance issues. [17-3] at 19–20. Dowdy contends that these employees were 53 and 61 years old and similarly never received any written disciplinary actions. [20] at 4; [17-3] at 20.

Mike Stage, who was about 57 or 58 years old, replaced Dowdy as a service technician. [18] at 3; [17-3] at 41. According to Parker, he hired Stage because he was "really, really positive" and had "really good experience" with 20–30 years in the industry. *Id.* at 39. Matt Rory, who was about 37 or 38 years old, also replaced Dowdy. *Id.* at 40–41. Parker stated that the owner of Southern Air & Plumbing knew Rory, and "he seemed like a great candidate." *Id.*

The parties dispute whether Dent was aware of Dowdy's medical issues. Dent argues that "Dowdy reported no health issues, took no medical leave, and made no requests for a reasonable accommodation" during his employment. [18] at 3. Prior to Dent's ownership of the business, Dowdy alleged that in April 2018, he suffered from congestive heart failure and was on leave until November 2018. *See* Compl. [1] ¶¶ 17–19. Dowdy testified that when he returned to work, he could perform his duties with no restrictions. [17-1] at 45. According to Dent, Dowdy's only health issue from January 2019 to the date of his termination was on February 1, 2019 when he arrived at work experiencing shortness of breath. *Id.* Dowdy went to the

emergency room, checked his heart, and physicians determined it was weather changes and his chronic obstructive pulmonary disease ("COPD") causing the shortness of breath. *Id.* at 45–46. Dowdy testified he had no limitations after he returned to work a week later. *Id.* at 46.

Dent argues that Parker was unaware of Dowdy's prior health issues until February 8. [18] at 4. On that day, Parker was walking down the hall when Vallejo called him into her office. [17-3] at 24. Dowdy also was present. *Id.* Parker testified that Vallejo recommended Dowdy go on disability leave because he had missed work before in 2018, and she was worried he would miss work again. *Id.* According to Dowdy, Vallejo stated, "Jerry, you need to file for disability. You're not going to be able to do this work anymore, so you might as well go ahead and start filing." [17-1] at 51. Parker, however, attested that he was not under the impression that Dowdy would have to miss work or that Dowdy agreed with Vallejo's statements. [17-3] at 24. Neither Parker nor Dowdy said anything during this discussion. [17-1] at 52; [17-3] at 24–25.

After the conversation, Vallejo told Dowdy to "be a salesman," and Dowdy went on a sales call. [17-1] at 53–54. But when Dowdy returned to work the next week, he resumed his normal duties as a service technician "as usual." [17-1] at 54. Neither Vallejo nor Parker made comments about Dowdy's health or suggested disability leave after this. [17-1] at 54–55. And Dowdy never filed for disability. [17-1] at 52, 54–55.

Dowdy sued Dent, alleging age and disability discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623, *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* [1] at 4–7. Dent now moves for summary judgment on all claims. [17].

II.   Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if, under the applicable substantive law, 'its resolution could affect the outcome of the action.'" *Patel v. Tex. Tech Univ.*, 941 F.3d 743, 747 (5th Cir. 2019) (quoting *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010)). "An issue is 'genuine' if 'the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party.'" *Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)) (alteration in original).

A party seeking to avoid summary judgment must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c). This party must present more than "speculation, improbable inferences, or unsubstantiated assertions." *Jones*, 936 F.3d at 321 (quoting *Lawrence v. Fed. Home Loan Mortg. Corp.*, 808 F.3d 670, 673 (5th Cir. 2015)). In analyzing a motion for summary judgment, the Court does not "weigh the evidence and determine the truth of the matter," *Klocke v. Watson*, 936 F.3d 240, 246 (5th Cir. 2019) (quoting *Anderson*, 477

5

U.S. at 249), but only decides whether there is a genuine issue for trial when viewing the evidence in the light most favorable to the party opposing summary judgment. *Duval v. N. Assur. Co. of Am.*, 722 F.3d 300, 303 (5th Cir. 2013).

III. Analysis

Dent moves for summary judgment on all claims, arguing that Dowdy fails to establish a prima facie case under either the ADA or ADEA, and even if he established a prima facie case, Dowdy has provided no evidence that Dent's legitimate, nondiscriminatory reason for his termination was pretext for discrimination. [18] at 1.

a. ADA

Dowdy alleges that Dent discriminated against him based on his disability or "perceived disability" in violation of the ADA. [1] at 4–5. The ADA prohibits an employer from discriminating against a qualified individual based on disability. 42 U.S.C. §§ 12102 *et seq*. A plaintiff can establish a disability discrimination claim either by presenting direct evidence of discrimination or proceeding under the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*. *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 579 (5th Cir. 2020). Dowdy pursues both avenues.

i. Direct Evidence of Disability Discrimination

"Direct evidence is evidence which, if believed, proves the fact without inference or presumption." *Brown v. Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993). Such evidence may include "statements or written documents showing a

6

discriminatory motive on its face." *Portis v. First Nat'l Bank*, 34 F.3d 325, 329 (5th Cir. 1994). A statement or document which shows "on its face that an improper criterion served as a basis—not necessarily the sole basis, but a basis—for the adverse employment actions [is] direct evidence of discrimination." *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 993 (5th Cir. 2005). Additionally, "[i]f an inference is required for evidence to be probative as to [Dent's] discriminatory animus in firing [Dowdy], the evidence is circumstantial, not direct." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897–98 (5th Cir. 2002).

Dowdy argues that Vallejo's comment—"Jerry, you need to file for disability. You're not going to be able to do this work anymore"—is direct evidence of Dent's discriminatory animus. [20] at 8 (citing [17-1] at 50). A "stray remark" cannot establish discrimination. *Waggoner v. City of Garland, Tex.*, 987 F.2d 1160, 1166 (5th Cir. 1993) (citing *Turner v. N. Am. Rubber, Inc.*, 979 F.2d 55, 59 (5th Cir. 1992)). As a result, Dowdy must show a violation of the ADA by under the *McDonnell Douglas* framework to prevail.

    ii. Prima Facie Case of Discrimination

Under the *McDonnell Douglas* framework, Dowdy must first establish a prima facie case of discrimination. *E.E.O.C. v. Chevron Phillips Chem. Co.*, 750 F.3d 606, 615 (5th Cir. 2009). If Dowdy succeeds, then the burden shifts to Dent "to articulate a legitimate, nondiscriminatory reason" for its adverse employment actions against Dowdy. *Id.* If Dent can do so, the burden shifts back to

7

Dowdy to show that Dent's proffered reason for the adverse employment action was pretextual. *Id.*

Though the parties dispute the elements required for a prima facie case of discrimination, Fifth Circuit law is clear. "To establish a prima facie discrimination claim under the ADA, [Dowdy] must prove: (1) that he has a disability; (2) that he was qualified for the job; [and] (3) that he was subject to an adverse employment decision on account of his disability." *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 1999) (quoting *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 853 (5th Cir. 1999)).

Dent argues that Dowdy has failed to establish a prima facie case of discrimination under the ADA. [18] at 11. Dowdy disagrees. [20] at 7. The parties first dispute whether Dowdy has a disability. An individual has a disability under the ADA if he "(1) has a physical or mental impairment that substantially limits one or more major life activities; (2) has a record of such impairment; or (3) is regarded as having such impairment." *Atkins v. Salazar*, 677 F.3d 667, 675 (5th Cir. 2011) (quoting *Stewart v. City of Houston Police Dep't.*, 372 F. App'x 475, 477 (5th Cir. 2010)).

An impairment is substantially limiting only if it "substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(ii). Major life events include caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing,

learning, and working. *Aldrup v. Caldera*, 274 F.3d 282, 287 (5th Cir. 2001) (citing 29 C.F.R. § 1630.2(i)).

Dowdy establishes a prima facie case of discrimination under the ADA. First, congestive heart failure and COPD are physical impairments. *See* 29 C.F.R. § 1630.2(h)(1). These physical impairments also substantially limit one or more of Dowdy's major life activities. Dowdy testified that whenever he had issues with his disabilities, he was off work to rest and take his prescribed medications because he "was not capable of performing [his] duties at the time." [17-1] at 43–45. Second, the parties do not dispute that Dowdy was qualified for the job, so the Court assumes he was.

Finally, construing the facts in the light most favorable to Dowdy, the Court finds a genuine issue of material fact exists as to whether Dowdy suffered an adverse employment action based on his disability. Dent terminated Dowdy's employment—an adverse employment action. *See McKay v. Johanns*, 265 F. App'x 267, 268–69 (5th Cir. 2008); *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007). And Dowdy points to the fact that Vallejo's comment—"Jerry, you need to file for disability. You're not going to be able to do this work anymore"—as evidence that Dent terminated him because of his disability. [17-1] at 50. This comment was made on February 8, 2019, and Dowdy was terminated on March 26, 2019. [17-1] at 27, 50. Taken together, this creates a fact issue given that this comment was made close in time to an event that highlighted Dowdy's ADA-

protected disability. *See Gosby v. Apache Indus. Servs., Inc.*, 30 F.4th 523, 527 (5th Cir. 2022). Dowdy therefore establishes a prima facie case.

Now, the burden shifts to Dent to articulate a legitimate, nondiscriminatory reason for the termination. Dent's proffered reason for terminating Dowdy was his persistent performance issues and lack of interest in improving. *See* [17-2] ¶¶ 3–6; [17-3] at 26–27, 32–33, 36.

A plaintiff can show pretext by supplying evidence that "(1) a discriminatory reason more likely motivated the employer, (2) the employer's reason is unworthy of credence, or (3) he is clearly better qualified than the person selected for the position." *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 457 (citations and quotation marks omitted).

Dowdy meets his burden of showing pretext. Dowdy testified that Parker never disciplined him for sleeping during meetings, missing meetings, or being in the break room when he was supposed to be on service calls. [17-1] at 41. In fact, Dowdy stated he never received negative performance evaluations or write-ups, and the only performance evaluation he received was a text message from Parker praising his good work. [17-1] at 40. Additionally, Vallejo's comment—"Jerry, you need to file for disability. You're not going to be able to do this work anymore"— taken together with the fact that this comment occurred close in time to Dowdy's termination supports a finding of a genuine dispute of material fact. [17-1] at 27, 50. As a result, Dowdy has met his burden of establishing pretext of discrimination.

The Court therefore denies Dent's Motion for Summary Judgment as to Dowdy's ADA discrimination claim.

      b. ADEA

The ADEA prohibits employers from discharging an individual because of the individual's age. 29 U.S.C. § 623(a)(1). These protections extend only to individuals who are at least 40 years old, however. 29 U.S.C. § 631. Similar to a discrimination claim under the ADA, plaintiffs may present a case by direct evidence, or circumstantially under a *McDonnell Douglas* analysis, when bringing an age discrimination claim under the ADEA. *See Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 474 (5th Cir. 2015) (citations omitted). Dowdy proceeds with the latter avenue.

A *McDonnell Douglas* analysis in the age discrimination context requires a plaintiff to establish "(1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age." *Id.* (citation omitted). If Dowdy establishes a prima facie case, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for termination," after which Dowdy must show the reason is pretextual. *McMichael*, 934 F.3d at 456 (citations omitted).

Dowdy has established a prima facie case of age discrimination. First, Dent terminated Dowdy's employment. [17-1] at 54. Second, the parties do not dispute that Dowdy was qualified for the position, and so the Court assumes he was. Third,

he was 61 years old at the time of termination. [17-1] at 33. Finally, Dowdy was replaced by someone younger. According to Parker, Dent hired Mike Stage, who was about 58–60 years old, and Matt Rory, who was about 37 or 38 years old, to replace Dowdy. [17-2] ¶ 6; [17-3] at 39–41.

Now, the burden shifts to Dent to proffer a legitimate, nondiscriminatory reason for Dowdy's termination. As the Court held, Dent articulated a legitimate, nondiscriminatory reason for Dowdy's termination. Now, the burden shifts to Dowdy to show that the reason is pretextual.

Dowdy meets this burden. Again, Dowdy was never disciplined, given a negative performance, or given the opportunity to improve his performance despite being terminated for poor performance. [17-1] at 40, 70. Additionally, Vallejo's comment could be construed to mean that Dowdy would be unable to work much longer because of his age and disability. [17-1] at 50. And the comment was made close before Dowdy was terminated. [17-1] at 27, 50. Construing the facts in the light most favorable to Dowdy, there is sufficient evidence "demonstrating the falsity of the employer's explanation, taken together with the prima facie case," to allow the jury to find that discrimination was the but-for cause of the termination. *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 478 (5th Cir. 2015) (quoting *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir. 2002)). Accordingly, Dent's Motion for Summary Judgment as to Dowdy's age discrimination claim under the ADEA.

IV. Conclusion

The Court has considered all arguments set forth by the parties. Those arguments not addressed would not have change the outcome of the Court's decision. For the reasons stated, the Court DENIES Dent's Motion for Summary Judgment [17].

SO ORDERED AND ADJUDGED this the 18th day of August, 2022.

s/ *Kristi H. Johnson*
UNITED STATES DISTRICT JUDGE
